## United States Rubber Products, Inc., v. Browne.

April 22, 1941.

148

Chas. R. Bell and Lee Stagner for appellant.

William H. Natcher for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing in part and affirming in part.

In October, 1934, the appellant entered into a contract with appellee and his then partner, M. H. Caldwell, doing business as Browne & Caldwell, providing for the sale of automobile tires, tubes and accessories. The nature of the contract was that of consignor and consignee, the title to the merchandise remaining in the consignor until paid for.

It appears that on January 25, 1935, appellee, hereinafter referred to as Browne, withdrew from the partnership and sold his interest therein to Caldwell, at which time the partnership indebtedness to appellant was $4,639. The business was continued, however, in the partnership name of Browne & Caldwell and appellant continued to consign merchandise to the partnership firm. In August, 1935, the indebtedness had been increased to the sum of $8,654.80 at which time appellant brought this action in equity against Browne & Caldwell (and certain other named defendants not involved in this appeal), seeking to recover of them collectively and severally, the said sum.

At the time of the filing of the action Browne had accepted employment with the United States Tire Dealers Mutual Corporation, a subsidiary of appellant, and had moved to Nashville, Tennessee, and was not served with summons. Caldwell made no defense to the action and judgment by default was rendered against him for the amount sued for, but it appears that he was insolvent and only a part of the judgment could be collected from him. Thereafter Browne was served with summons and filed his answer alleging that he severed his connection with the firm of Browne & Caldwell on January 26, 1935, at which time the partnership indebtedness to appellant amounted to only $4,639. He further alleged that on April 17, 1935, appellant made a settlement with Browne & Caldwell but at that time the business was owned, operated and managed solely by Caldwell and that plaintiff settled its account in full with Caldwell for the sum of $5,182.70, and that the settle-

ment was brought about by appellant as a result of his, Browne's, severance of connection with the partnership and to protect its indebtedness as against Caldwell; that the notes evidencing the indebtedness owing to appellant at that time were executed and delivered by Caldwell and that by accepting said notes appellant relieved him, Browne, from all liability upon any and all of the debts due appellant from the firm of Browne & Caldwell, and that Caldwell assumed payment of all debts due against the partnership and in turn received all of the assets thereof, and since appellant was notified of the change in ownership of the partnership business and acquiesced therein, and in making the settlement on April 17, 1935, in the manner stated, it is now estopped from asserting any claim against him.

Appellant filed its reply traversing the allegations of the answer and pleaded affirmatively that the contract entered into between appellant and the partnership firm of Browne & Caldwell provides how the agreement may be terminated and sets out certain clauses of the contract which provides in substance that the agreement may be terminated by either party upon giving ten days' notice in writing to the other, and upon termination of the agreement consignee (the partnership) will remove the "United States Tire Service Station" sign and all other advertising of United States tires, tubes and accessories and will cease representing himself as distributor of consignor's goods. It further provides that the agreement may not be assigned by the consignee without the consent of the consignor. By clause 23 of the contract it was provided that in case of liquidation or settlement of indebtedness by taking notes, other negotiable paper, guaranties, security or otherwise, shall not be binding upon the consignor as payment of the indebtedness, or anything more than mere evidence of its existence and amount, unless same should be in writing and signed by the assistant general sales manager of appellant.

The issues were made and the evidence was taken consisting of the depositions of Browne in his own behalf and that of L. M. Sullivan, representative of appellant, in its behalf. The case was submitted upon the pleadings and evidence and the court dismissed appellant's petition. Hence, this appeal.

Browne gave his deposition in October, 1937, previ-

ous to the taking of the deposition of Sullivan for appellant. Browne testified that in the early part of January, 1935, three representatives of appellant, namely, L. M. Sullivan, J. G. Booth and C. W. Duffey, attended a meeting at his place of business in Bowling Green and was present and heard the discussion between him and Caldwell as to the dissolution of the partnership and understood that the partnership was to be dissolved at an early date. He said that on the following Saturday he went to Cincinnati, Ohio, and saw F. C. Johnson and told him that a settlement of the partnership between himself and Caldwell would be effected soon. He said that on January 26, 1935, the dissolution and settlement of the partnership was consummated and on the following day he called F. C. Johnson, district manager of appellant, at his office in Cincinnati, Ohio, and told him that he had withdrawn from the partnership and was no longer a member of it.

Testifying in regard to the amount of the indebtedness of the partnership to appellant on January 26, 1935, Browne admitted on cross-examination that there was no understanding between himself and appellant as to whether or not he would be released from liability of that indebtedness. He admitted that Caldwell continued the business in the name of Browne & Caldwell but insists that notwithstanding the use of the partnership name, appellant fully understood that he was not, and had not been, a member of the firm since January 26, but consigned the merchandise to Caldwell in the name of the old partnership firm with the knowledge that Caldwell was the sole owner of the same and had been since January 26. He insists, however, that the settlement made between appellant and Caldwell in April, 1935, and the acceptance by appellant of the note for $5,182.70, which included the $4,639 due January 26, executed by Caldwell and signed Browne & Caldwell, by M. H. Caldwell, was a novation and thereby released him from liability of any and all indebtedness to appellant.

We do not think that the settlement in April, 1935, has much if any bearing upon the issues or a just determination of this case. Be that as it may, however, since the note for $5,182.70, executed as a result of that settlement, included the $4,639 due January 26 which was a partnership obligation, it is at once obvious that the

execution of this note by Caldwell did not exonerate Browne or relieve him of liability to the extent of the indebtedness due January 26, and this is particularly true in view of clause 23 of the contract which provided in substance that notes or other paper, guaranties, etc., would not constitute payment of any indebtedness unless same was in writing "And signed by the Ass't. General Sales Manager." There is no claim that the general sales manager or any representative of appellant consented in writing or otherwise agreed to accept the notes executed by Caldwell as payment of the indebtedness, but contra, as provided in that clause of the agreement, the notes were only evidence of the existence and amount of the indebtedness. It results, therefore, that Browne is liable to appellant for the indebtedness of the partnership due January 26, 1935.

This brings us to the question of whether or not appellant had notice of the dissolution of the partnership on January 26, 1935, and whether or not thereafter Browne was liable for any further credit extended to Caldwell, although he was still doing business in the name of the original partnership, Browne & Caldwell. L. M. Sullivan testified that he, Booth and Duffey were present at the meeting in the early part of January, 1935, referred to by Browne, and that the purpose of the meeting was to ascertain the indebtedness and financial condition of the partnership, but that he heard nothing said at that time nor since about Browne withdrawing or contemplating withdrawing from the partnership and that no other representative of the company had such knowledge, notice or information so far as he knew. His evidence contradicted that of Browne's to the extent that Sullivan and the other representatives of the company who were present at that meeting, understood that the partnership was in the process of dissolution or would be dissolved at an early date. However, there is no contradiction of Browne's testimony to the effect that he went to Cincinnati on Saturday following the meeting in the early part of January, and told F. C. Johnson that the partnership would soon be dissolved or that he was withdrawing therefrom, and further, that he called Johnson on the telephone on January 27 and notified him that the partnership had been dissolved and he was no longer a member thereof. Browne's deposition was given about six months before that of Sullivan

152

and it appears that appellant had every opportunity to rebut Browne's evidence but it failed to do so. If Browne was in error or testified falsely concerning the notice he gave Johnson over the telephone on January 27, it is passing strange that appellant would let such testimony go undenied.

Appellant insists, however, that the withdrawal of Browne from the partnership and the manner of notice claimed by him, if such notice was given, did not relieve him from liability to appellant for credit extended Caldwell in the name of the partnership firm after January 27, because such notice was not given in writing as provided in the agreement. Clause 17 of the agreement provides, among other things, that "* * * this agreement may be terminated by either party, irrespective of cause, upon the giving of ten (10) days' notice in writing to the other. On termination of this agreement the Consignee will remove the 'United States Tire Service Station' sign, which is the Consignor's property, and all other advertising of the United States tires, tubes and accessories, and will cease representing himself as a distributor of Consignor's goods.''

It is doubtful that the notice was intended by the parties to apply to the situation here involved, namely, the withdrawal of one partner from the firm and the continuation of the business by the other. It appears that that notice had reference to a complete termination of the contract and an entire cessation of business relations between the parties. Clause 19 of the contract reads:

"Any notice to the Consignee by the Consignor mentioned herein shall be deemed fully given upon the giving of actual notice to the Consignee, or an officer or representative of same, *or upon deposit of written statement of same in the United States mails, addressed to the Consignee.''* (Our italics.)

It is thus seen that clause 19 apparently conflicts with clause 20 with reference to the form or manner of notice. Clause 20 provides that *either* party must give the other written notice, but clause 19 provides that any notice to the consignee by the consignor, mentioned in the contract, may be deemed fully given upon the giving of actual notice to the consignee, or upon deposit of a

written statement in the United States mail, which indicates that notice may be oral or written.

We do not mean to say that clause 19 is controlling, but at the least, it tends to create a doubt as to whether or not written notice would be strictly required, since that clause refers to *any* notice mentioned in the contract. If Browne's evidence is to be believed, and it must be since it is undenied, appellant had actual notice of his withdrawal from the partnership on January 27, 1935. Since it is doubtful that the written notice provisions of the agreement was intended to apply to this situation and in view of the apparent conflict between clauses 19 and 20, and the undenied evidence that appellant had actual verbal notice of Browne's withdrawal from the partnership, we are constrained to the conclusion that the notice given by Browne of his withdrawal from the partnership was a substantial compliance with the terms of the contract. It follows from what has been said that Browne is not liable for any credit extended by appellant to Caldwell after January 27, 1935.

Wherefore, the judgment is reversed as to the indebtedness owed appellant by the partnership firm of Browne & Caldwell up to and including January 27, 1935, and affirmed as to any amount claimed by appellant over and above that sum.